O'Leary v. Reed.

FRANK O'LEARY v. MATTHIAS REED, *et al.*

NEW TRIAL, *No Error in Denying.* In an action brought to recover upon a promissory note, the defense was that at the execution of the note the maker was in such a state of drunkenness as drowned reason, memory and judgment, and too drunk to understand or assent to any contract. Upon the trial, he produced evidence tending to establish this defense, and evidence having been offered on the part of the holder of the note that he obtained the money mentioned in the note, and wrote with his own hand his signature thereto, the defendant testified he could not write; that he never signed his name in his life; and introduced witnesses who testified that he had no education, and could not write. Upon a motion for a new trial, defendant alleged surprise at the introduction of evidence that he made his signature to the note, and presented various affidavits that he could not write his own name. *Held,* The court committed no error in denying the application for a new trial.

*Error from Miami District Court.*

ACTION by *Reed* and two others, partners as Reed, Staley & Co., against *O'Leary*, to recover on a promissory note. Trial at the October Term, 1882, and judgment for plaintiffs for $1,092.99. Defendant brings the case here. The facts are stated in the opinion.

*Burris & Little,* for plaintiff in error.

*Brayman & Sheldon,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This action was brought to recover upon a promissory note alleged to have been executed by the plaintiff in error and one James Murray to the defendants in error. The plaintiff in error filed an answer alleging that no recovery ought to be had upon the note against him, for "that at the execution and delivery of the note he was in a state of total drunkenness; that he was in such a state of drunkenness as drowned reason, memory, and judgment; and too drunk to understand or assent to any contract." Upon the trial, the plaintiff in error had the opening of the case and assumed the burden of proof. His evidence was in support of the allegations of his answer, and he produced several witnesses who testified he was in a state of intoxication on or about the date of the execution of the note sued on. Matthias Reed, one of the defendants in error, who lives at Louisburg, where the bank of the defendants in error is situated, testified that on the day the note bears date, the plaintiff in error came to his office at nine o'clock in the morning and said he wanted some money; that he told him he could not tell (if he could have it) without going to the bank, which was two or three hundred yards distant; that plaintiff in error then said he had been to the bank and they had refused him, and said he was no drunker than I was; that he stayed there until the evening, and then insisted he must have the money before the four o'clock train; that he got the

money, and was the first one to sign the note; that he signed
the note at the bank between three and four o'clock; that he
said they had bought cattle, and wanted the money and not
a draft; that after he got the money ·he went away on a
freight train; that he got other money before that time at
the bank, and in giving the notes therefor he had signed them
himself, and that he had seen him sign three or four notes.

Staley, one of the defendants in error, testified he was pres-
ent when the note was executed, and saw the plaintiff in error
sign it himself; that he knew the plaintiff in error signed the
note; that he remembered distinctly the fact, because he had
the curiosity to see whether he would sign his name or make
his mark.

One Chaplin testified he met the plaintiff in error at the
bank on the day the note was executed; that he said he wanted
a thousand dollars to pay on cattle he had bought; that he
passed the money over to him, and he pushed it to James
Murray without counting it; that he didn't see the note signed,
as he was not looking at the parties when the note was signed.

In rebuttal, the plaintiff in error testified he could not
write, and that he never signed his name in his life; and also
introduced his brother, who testified that the plaintiff in error
had no education and could not write; and also produced three
other witnesses, who testified that they had had business with
him, but never knew of his writing or signing his name.
They further stated, however, that they did not know whether
he could write or not. Judgment was rendered upon the note
as prayed for. A motion for a new trial was made by the
plaintiff in error upon the ground of accident and surprise,
which ordinary prudence could not have guarded against,
and also upon the ground of newly-discovered evidence ma-
terial to the case.

In support of this motion, the plaintiff in error filed his
affidavit that he never signed the note, because he could not
sign his own name, and also presented the affidavits of his
mother, sister, brother, and others, that he could not and

O'Leary v. Reed.

never did sign his name in his life. His claim is, that he was taken wholly by surprise by the evidence offered by the defendants in error that he had signed the note with his own hand; and that in view of the affidavits filed by him that he could not write and never did sign his name, the judgment of the court below ought to be reversed.

We do not agree with this conclusion. The allegation of the execution of the note sued on was admitted by the pleadings, and in the trial evidence was offered by the plaintiff in error that he did not write and could not write, and that he never signed his name in his life. The so-called newly-discovered evidence at most was merely cumulative to that which he had already introduced, and is no ground for a new trial.

Again, with the admission upon his part, by his answer, that the note was executed as alleged in the petition, he cannot very well say that he was surprised at the evidence introduced on the part of the defendants in error. A party cannot upon a trial produce just as much evidence as he thinks proper, then stop short and ultimately obtain a new trial on the ground that he did, on the first trial, give all the evidence which he then thought necessary, and has since found out he ought to have given more. (*Doe v. Price,* 1 Man. & Ry. 603.)

The judgment of the district court will be affirmed.

All the Justices concurring.